United States District Court
Middle District of Florida
Jacksonville Division

PAMELA DUNKEL,

      *Plaintiff,*

V.                                                                NO. 3:15-CV-948-J-34PDB

KEITH HEDMAN,

      *Defendant.*

---

## Report & Recommendation

In 2013, in separate federal criminal cases in the Eastern District of Virginia, Michael Dunkel and Keith Hedman pleaded guilty to major fraud against the United States, in violation of 18 U.S.C. § 1031.[1] Michael Dunkel's wife, Pamela Dunkel, without a lawyer, now sues Hedman for torts based on her contention Hedman's fraud caused her husband's conviction.[2] Doc. 17. Before the Court is Hedman's motion to

---

[1]The criminal cases against Dunkel and Hedman are *United States v. Keith Hedman*, No. 1:13-cr-74 (E.D. Va.) and *United States v. Michael Brian Dunkel*, No. 1:13-cr-220-GBL (E.D. Va.). Doc. 19-1, Doc. 19-2. Hedman also pleaded guilty to conspiracy to commit bribery in violation of 18 U.S.C. § 371. See docket entry 7 in *United States v. Keith Hedman*, No. 1:13-cr-74 (E.D. Va.).

[2]Dunkel also brought civil actions here against others related to the criminal cases. *See Dunkel v. Joseph Richards*, No. 3:15-cv-945-J-34PDB; *Dunkel v. Joseph Hertogs*, No. 3:15-cv-946-J-34PDB; *Dunkel v. David San Born*, No. 3:15-cv-947-J-34PDB; *Dunkel v. Dawn Hamilton*, No. 3:15-cv-949-J-34PDB. The Court dismissed *Richards*, *Hertogs*, and *Born* without prejudice due to Dunkel's failure to comply with orders. A motion to dismiss in *Hamilton*—similar to the motion to dismiss here—is pending. A report and recommendation was entered on August 8, 2016, recommending granting it. *See* docket entry 49 in *Hamilton*, No. 3:15-cv-949-J-34PDB.

dismiss under Federal Rules of Civil Procedure 12(b)(2), (b)(3), and (b)(6) for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief may be granted, Doc. 19, Dunkel's response in opposition, Doc. 23, Dunkel's motion for leave to amend the complaint to add exhibits, Doc. 34, and Hedman's response in opposition, Doc. 35. The motion to dismiss does not request dismissal with prejudice. *See generally* Doc. 19.

## I.    Procedural Background

Dunkel filed the original complaint in July 2015. Doc. 1. Hedman moved to dismiss it under Rules 12(b)(1), (b)(2), (b)(3), and (b)(6) for lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief may be granted. Doc. 7. The Court struck the complaint due to insufficient jurisdictional allegations and denied the motion to dismiss as moot. Doc. 13. Dunkel filed an amended complaint. Doc. 17. The Court found its sua sponte inquiry into subject-matter jurisdiction satisfied. Doc. 18. Hedman filed the current motion to dismiss. Doc. 19. The parties later met and filed a case management report, and the Court entered a case management and scheduling order. Docs. 26, 31. Hedman moved to stay discovery pending a decision on the motion to dismiss. Doc. 32. The Court granted the motion and stayed all deadlines in the case management and scheduling order. Doc. 33. Dunkel moved for leave to amend the complaint to add exhibits. Doc. 34. There are no other pending motions.

## II.      Amended Complaint

The amended complaint alleges the following facts. Dunkel is a citizen of Florida. Doc. 17 ¶ 2. She is married to Michael Dunkel. Doc. 17 ¶ 33. Hedman is a citizen of Maryland. Doc. 17 ¶ 3. Security Assistance Corporation ("SAC") is a Virginia corporation with its principal place of business in Virginia. Doc. 17 ¶ 8. SAC participated in the 8(a) Business Development Program administered by the United States Small Business Administration.[3] Doc. 17 ¶ 10. Hedman "assisted in fraudulent insertion of Dawn Hamilton as the owner of SAC, who had 8(a) designation to control the company." Doc. 17 ¶ 21. Hedman actually controlled SAC as its owner and chief executive officer. Doc. 17 ¶¶ 7, 22. He also owned and controlled Protection Strategies, Inc., another Virginia corporation. Doc. 17 ¶ 9.

From 2005 to 2012, Michael Dunkel had a business relationship with Hedman and SAC. Doc. 17 ¶ 23. He misled Dunkel "into believing that he [had] appropriate certifications to deal with" the National Aeronautics and Space Administration ("NASA") and other government agencies. Doc. 17 ¶¶ 24. He knew he did not because he knew SAC had no minority owner and therefore did not qualify for participation in the 8(a) program. Doc. 17 ¶ 25. He concealed from the Dunkels that SAC should not have participated in the 8(a) program. Doc. 17 ¶ 42. As a result, Michael Dunkel

---

[3]According to the United States Small Business Administration, "The 8(a) Business Development Program is a business assistance program for small disadvantaged businesses. The 8(a) Program offers a broad scope of assistance to firms that are owned and controlled at least 51% by socially and economically disadvantaged individuals." *See* U.S. Small Business Administration, "About the 8(a) Business Development Program," https://perma.cc/2WBJ-3AV4.

"entered into a [fraudulent] contractual relationship" with him, was associated with the fraud, was convicted of a federal crime "in which he had no knowledge of any wrongdoing," was sentenced to 60 months' imprisonment, and was ordered to forfeit $2.9 million. Doc. 17 ¶¶ 38−40, 44, 48.

Michael Dunkel's imprisonment has caused Dunkel depression, emotional distress, and financial loss. Doc. 17 ¶¶ 29, 30, 31, 35. She lost her home, had to move to rental property, and had to find work over an hour away. Doc. 17 ¶ 30. She lost his "society, affection[,] and companionship" after "29 years of partnership." Doc. 17 ¶ 33. She has to do things he used to do and work "endless hours" to meet "daily living obligations" and care for her elderly mother-in-law. Doc. 17 ¶¶ 34, 35.

Dunkel asserts common law tort claims for fraudulent misrepresentation (count I), intentional infliction of emotional distress (count II), loss of consortium (count III), fraud in the inducement (count IV), and concealment (count V). Doc. 17. She seeks compensatory and punitive damages, including damages for losing her home, losing her husband's current and future income, pain and suffering, and the $2.9 million forfeiture amount. Doc. 17 ¶¶ 46−48.

## III.   Motion to Dismiss & Response

Hedman argues the Court should dismiss the amended complaint under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue, observing the amended complaint does not allege contact between him and Florida to satisfy Florida's long-arm statute or due process requirements. Doc. 19 at 3−9. He argues the Court should dismiss the claims under Rule 12(b)(6) for failure to state

claims upon which relief may be granted, contending Dunkel has alleged insufficient facts to support any of them. Doc. 19 at 10–21. Within that argument, he contends Dunkel lacks standing to bring the fraud-based claims. Doc. 19 at 14. And he argues public policy should prevent recovery of the $2.9 million her husband forfeited. Doc. 19 at 21–23.

Hedman attaches to the motion: (1) the plea agreement in which Michael Dunkel pleaded guilty to major fraud against the United States, Doc. 19-2, and (2) a stipulated statement of facts in which Michael Dunkel stipulated to the truth and accuracy of facts supporting his plea, Doc. 19-1. The stipulated facts are detailed and lengthy. *See generally* Doc. 19-1. He admitted to having knowingly defrauded the United States through falsities bearing on SAC's ability to participate in the 8(a) program and obtain preferences for bids on government projects. *See* Doc. 19-1.

Dunkel responds the Court has personal jurisdiction over Hedman and venue is proper in this district because her husband's business was in Florida and SAC contracted with that business to perform work in Florida. Doc. 23 at 1–6. She contends her husband's guilty plea is not proof of his guilt because his decision to plead was a "business decision" based on age and health and he has moved for post-conviction relief under 28 U.S.C. § 2255 on the ground the plea was not knowingly, voluntarily, and intelligently made.[4] Doc. 23 at 1, 7. She details facts she contends

---

[4]Michael Dunkel's § 2255 motion is docket entry 34 in *United States v. Michael Dunkel*, No. 1:13-cr-220-GBL (E.D. Va.). It was filed on March 19, 2015. On August 9, 2016, the court denied it and entered judgment in favor of the United States and against Michael Dunkel. Docket entries 38 & 39 in case no. 1:13-cr-220-GBL (E.D. Va.).

establish Hedman's fraud against her husband. Doc. 23 at 2–8.

## IV.   Motion for Leave to Amend & Response

Dunkel requests leave to amend the amended complaint to add exhibits and references to them. Doc. 34. She summarily states amendment is warranted because it will serve "the interest of justice" and the exhibits can be found on PACER. Doc. 34 at 1. The exhibits are: (1) documents showing Hedman's ownership of a home in Maryland, Doc. 34-1; (2) the plea agreement in which Hedman pleaded guilty to major fraud against the United States, Doc. 34-3; (3) a stipulated statement of facts in which Hedman stipulated to the truth and accuracy of facts supporting his plea, Doc. 34-2; (4) the criminal information from the criminal case against Hedman, Doc. 34-4; (5) the judgment from the criminal case against Hedman sentencing him to 72 months' imprisonment, Doc. 34-5; (6) a consent order of forfeiture of $6,149,730.88 from the criminal case against Hedman, Doc. 34-6; (7) a press release by the United States Attorney's Office for the Eastern District of Virginia concerning Hedman's agreement to pay $4.5 million to settle civil claims, Doc. 34-7; and (8) a printout from the United States Small Business Administration's website announcing the proposed disbarment of Hedman and others, Doc. 34-8. Like the stipulated facts in Michael Dunkel's criminal case, the stipulated facts in Hedman's criminal case are detailed and lengthy. *See generally* Doc. 34-2. He too admitted to having knowingly defrauded the United States through falsities bearing on SAC's ability to participate in the 8(a) program and obtain preferences for bids on government projects. *See* Doc. 34-2.

Hedman responds amendment would be futile because the exhibits do not cure the deficiencies asserted in the motion to dismiss the amended complaint and would cause undue burden because Dunkel filed the motion over four months after he moved to dismiss the amended complaint and it would require him to expend additional resources to prepare and file a third motion to dismiss. Doc. 35.

## V.    Law & Analysis

A court must hold a pleading drafted by a pro se litigant to a less stringent standard than one drafted by a lawyer. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Although a court must treat a pro se pleading leniently, the court cannot rewrite a deficient pleading for a party or otherwise serve as his de facto counsel. *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Here, because Dunkel is unrepresented, that less-stringent standard applies.

## A.    *Standing*

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoted authority omitted). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id.* "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* At a "constitutional minimum," a plaintiff must allege she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

"In addition to these three constitutional requirements, … prudential requirements pose additional limitations on standing." *Hawes v. Gleicher*, 745 F.3d 1337, 1341 (11th Cir. 2014) (quoted authority omitted). "For example, a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The question of prudential standing often is resolved by the nature and source of the claim. *Warth*, 422 U.S. at 500; *see also Int'l Primate Prot. League v. Admins. of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) ("[S]tanding is gauged by the specific common-law, statutory or constitutional claims that a party presents."). Unlike constitutional standing requirements, "the prudential requirements are essentially a matter of self-governance." *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1270 (11th Cir. 2006) (internal quotation marks omitted). Whether based on constitutional requirements or prudential considerations, the "rules of standing … are threshold determinants of the propriety of judicial intervention." *Warth*, 422 U.S. at 517−18.

There is an exception to application of the prudential standing doctrine if the jurisdictional standing requirements are met, the plaintiff has a close relationship with the person possessing the right to the claim, and there is a "hindrance" to the possessor's ability to bring the claim. *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). A hindrance may exist if the possessor is deterred from suing, his claims are "imminently moot," or he faces "systemic practical challenges to filing suit." *Smith v.*

*Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 208–09 (6th Cir. 2011).

As evidenced by prisoner lawsuits nationwide, incarceration is not a hindrance to ability to bring a claim. *See, e.g., McDonald v. Coyle,* 175 F. App'x 947, 949 (10th Cir. 2006) (husband established no hindrance to imprisoned wife's ability to bring a malpractice claim against her defense lawyer); *McDonald v. Van Houtte,* 160 F. App'x 673, 675 (10th Cir. 2005) (same); *Massey v. Helman,* 196 F.3d 727, 741 (7th Cir. 1999) (prison doctor did not have standing to bring claims on behalf of inmates in part because he made no allegation that "the inmates have any obstacle preventing them from properly asserting their own rights"); *McCollum v. Cal. Dept. of Corr. & Rehab.,* 647 F.3d 870, 879 (9th Cir. 2011) (chaplain did not have standing to assert inmates' rights because "the inmates are able to assert their own rights").

"It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth,* 422 U.S. at 518. "For purposes of ruling on a motion to dismiss for want of standing, ... the trial court ... must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* at 501. "At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Id.* (internal citation omitted). "If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Id.* at 501–02.

Hedman asserts Dunkel does not have standing to bring claims on behalf of her husband and cannot personally assert his fraud claims because, under Florida law, "'relief in equity against fraud is personal to the one defrauded.'" Doc. 27 at 14 (quoting *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. Dist. Ct. App. 2005)). Dunkel does not address standing. *See generally* Doc. 23.

Accepting as true the factual allegations in the amended complaint and construing them in Dunkel's favor, they satisfy constitutional standing requirements but not prudential ones. They make clear Dunkel rests all but her loss-of-consortium claims solely on her husband's rights and interests. Even inferring she—as his wife of many years—was his close confidante, the alleged fraudulent conduct was directed at him or his company, not at her, making the fraud-based claims his or his company's, not hers, to bring. The only allegation in the amended complaint regarding action or inaction involving Dunkel (as opposed to her husband) is a single conclusory one under the concealment claim that could apply to anyone unassociated with Hedman. *See* Doc. 17 ¶ 42 ("Plaintiff, Pamela Dunkel, asserts that defendant refrained from disclosing to her husband or herself that in fact [SAC] was not properly classified and was not a legal 8(a) Company.").

The exception to application of the prudential standing doctrine does not apply. Even though Dunkel alleges marriage to Michael Dunkel (a presumed close personal relationship), she alleges no fact indicating a hindrance to him bringing his claims directly. His incarceration does not suffice. *See, e.g.*, *Coyle*, 175 F. App'x at 949; *Van Houtte*, 160 F. App'x at 675; *Massey*, 196 F.3d at 741; *McCollum*, 647 F.3d at 879.

10

I recommend dismissing all but the loss-of-consortium claim based on the prudential standing doctrine and, alternatively, based on failure to sufficiently allege personal jurisdiction (discussed below), improper venue (discussed below), and failure to state a claim upon which relief may be granted (all discussed below).

## B.    *Personal Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss an action for lack of personal jurisdiction. Serving a summons establishes personal jurisdiction over a defendant subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. Fed. R. Civ. P. 4(k)(1)(A). A federal district court sitting in diversity has personal jurisdiction over a defendant if the state's long-arm statute is satisfied and the defendant has sufficient minimum contacts with the forum state to satisfy due process and comport with traditional notions of fair play and substantial justice. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214, 1220 (11th Cir. 1999); *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The test for jurisdiction under Florida law is the same. *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502–03 (Fla. 1989) (court has personal jurisdiction if complaint alleges sufficient facts to satisfy Florida's long-arm statute and sufficient minimum contacts are shown to satisfy requirements of due process and comport with fair play and substantial justice).

The plaintiff bears the initial burden of establishing a prima facie case of personal jurisdiction against the defendant "by presenting sufficient evidence to withstand a directed verdict motion." *Internet Sols. Corp. v. Marshall,* 557 F.3d 1293,

1295 (11th Cir. 2009). The burden then shifts to the defendant to challenge that initial showing through "affidavits, documents or testimony," then back to the plaintiff to prove jurisdiction through the same type of evidence. *Id.*

Florida's long-arm statute conveys personal jurisdiction over defendants with specified connections to Florida. Fla. Stat. § 48.193. Section (1)(a)(2) conveys personal jurisdiction over a person who commits a tortious act within Florida. Fla. Stat. § 48.193(1)(a)(2). Courts have interpreted that statute broadly, finding it "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state."[5] *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). "[T]elephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction … if the alleged cause of action arises from the communications." *Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002). If personal jurisdiction is based on the commission of a tortious act in Florida, a court must determine whether the complaint states a cause of action before determining whether personal jurisdiction has been established. *Wendt*, 822 So. 2d at 1260.

Section (1)(a)(1) conveys personal jurisdiction over a defendant who is "operating, conducting, engaging in, or carrying on a business or business venture in

---

[5]This Court has previously questioned whether Florida's long-arm statute "is properly understood to encompass *all* tortious acts which were complete outside Florida but ultimately have consequences here only because a Florida resident suffers damages," but ultimately concluded it is bound to follow binding Eleventh Circuit precedent interpreting the statute until the Florida Supreme Court rejects it. *Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Southeast LLC*, No. 3:13–cv–306–J–34JRK, 2014 WL 1268584, at *7 (M.D. Fla. March 27, 2014) (unpublished) (internal quotation marks omitted, emphasis in original).

this state" or has an office or agency in Florida. Fla. Stat. § 48.193(1)(a)(1). To qualify under that provision, a defendant's business activities must collectively show a "general course of business activity in the state for pecuniary benefit." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013). Factors include "(1) the presence and operation of an office in Florida, (2) the possession and maintenance of a license to do business in Florida, (3) the number of Florida clients served, and (4) the percentage of overall revenue gleaned from Florida clients." *Id.* (internal quotation marks omitted).

Section (1)(a)(6) conveys personal jurisdiction over a defendant who causes injury to a person within Florida arising from an act or omission outside Florida if, at or about the time of the injury, the defendant was engaged in solicitation or service activities within this state. Fla. Stat. § 48.193(1)(a)(6). That provision applies only if the plaintiff alleges bodily injury or physical property damage; economic damage does not suffice. *Identigene, Inc. v. Goff*, 774 So. 2d 48, 49 (Fla. Dist. Ct. App. 2000).

Satisfying Florida's long-arm statute does not automatically satisfy due process requirements, although "implicit within several of the enumerated circumstances are sufficient facts which if proven, without more, would suffice to meet the requirements." *Venetian Salami,* 554 So. 2d at 502. To determine if due process requirements are satisfied, a court considers whether the defendant's contacts with the forum state are related to the plaintiff's cause of action, whether the defendant purposefully availed himself of the privilege of conducting activities within the forum state, and whether exercising personal jurisdiction comports with

13

traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). The "constitutional touchstone" is whether the defendant has sufficient minimum contacts with the forum state "such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

The due process analysis focuses on the defendant's contact with the state itself, not his contact with people who reside in the state. *Walden v. Fiore*, 134 S. Ct. 1115, 1122–23 (2014). Merely contracting with a Florida resident does not suffice. *Burger King*, 471 U.S. at 478–79. The inquiry involves an analysis of the terms, the prior negotiations, the contemplated future consequences, and the course of dealing. *Id.* Conducting business in a state suffices if the business is connected to the cause of action. *Kelly v. Florida*, 597 So. 2d 900, 902 (Fla. Dist. Ct. App. 1992); *deMco Techs., Inc. v. C.S. Engineered Castings, Inc.*, 769 So. 2d 1128, 1132 (Fla. Dist. Ct. App. 2000). Committing a tort establishes minimum contacts if the tortious conduct is intentionally and purposefully directed at a Florida resident and causes harm in Florida. *Licciardello*, 544 F.3d at 1287–88; *see also Godfrey v. Neumann*, 373 So. 2d 920, 922 (Fla. 1979) (commission of tort, even if by single act, sufficient to establish minimum contacts).

Hedman does not attach affidavits or other documents to challenge the accuracy of Dunkel's complaint allegations on personal jurisdiction. *See generally* Doc. 19. Instead, he argues Dunkel has not alleged sufficient facts to establish personal jurisdiction. Doc. 19 at 3–9. In response, Dunkel abandons the contention in

her amended complaint that jurisdiction is proper under the tortious-conduct provision and instead presents additional facts she contends satisfy the requirements of Florida's long-arm statute under the business provision and the personal-injury provision. Doc. 23 at 1–5. She contends Hedman had minimum contacts with Florida by virtue of his company's business with NASA in Florida and because "a contractor who lived in Florida [Michael Dunkel] handled a substantial amount" of his business. Doc. 23 at 5–6.

The allegations in the amended complaint do not establish personal jurisdiction under any asserted provision of the Florida long-arm statute. They do not satisfy the business provision because they do not set forth facts to show Hedman was engaged in a general course of business activity in Florida. Dunkel states Hedman lived in Maryland, owned Virginia-based companies, and had a business relationship with her husband, who was presumably a Florida citizen, Doc. 17 ¶¶ 3, 7, 8, 9, 23, but those allegations do not suffice because they do not describe Hedman's business activities in Florida. They do not satisfy the tortious-conduct provision because they state no cause of action for any tort against her (discussed below), and without a cause of action, there is no basis for exercising that provision. *See Wendt, 822 So. 2d at 1260*. They do not satisfy the personal-injury provision because they include no claim of bodily injury or physical property damage. *See Identigene, 774 So. 2d at 49*.

Even if the allegations in the amended complaint showed jurisdiction under Florida's long-arm statute, they do not show Hedman had sufficient minimum

contacts with Florida. Merely contracting with a Florida resident is not enough, *see Burger King*, 471 U.S. at 478–79, and they provide no facts about Hedman's business activities in Florida beyond that his company contracted with a Florida-based company. *See generally* Doc. 17. Committing a tort in Florida could suffice, but the amended complaint states no cause of action for a tort. *See Wendt*, 822 So. 2d at 1260.

In her response, Dunkel briefly mentions the standard for general jurisdiction and asserts Hedman has a substantial connection to Florida. Doc. 23 at 5. General jurisdiction arises when "the defendant's connection with the forum state is so substantial that no specific or enumerated relationship between the alleged wrongful actions and the state is necessary." *Caiazzo v. American Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011). A person conducting business in Florida may be subject to general jurisdiction if he has "continuous and systematic general business contacts" with the state. *Trustees of Columbia Univ. v. Ocean World, S.A.*, 12 So. 3d 788, 792 (Fla. 4th DCA 2009). That requires a more rigorous showing of contacts and surpassing a "much higher threshold" than that required to show specific jurisdiction. *Id.* Dunkel has not satisfied the lower threshold much less the higher threshold.

I recommend dismissing the amended complaint based on failure to allege sufficient facts to show personal jurisdiction, and, alternatively, the prudential standing doctrine (discussed above), improper venue (discussed below), and failure to state a claim upon which relief may be granted (discussed below).

### C.   *Venue*

Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss

an action for improper venue. Venue is proper in:

**(1)**   a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

**(2)**   a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

**(3)**   if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). When a defendant challenges venue, the plaintiff must show

venue is proper. *Pinson v. Rumsfeld,* 192 F. App'x 811, 817 (11th Cir. 2006). If the

Court does not hold an evidentiary hearing, the plaintiff must present only a prima

facie showing that venue is proper, and the court must take all allegations in the

complaint as true to the extent they are uncontroverted by the defendant's affidavits.

*Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). If a court

concludes venue is improper, it may, in its discretion, either dismiss the case or

transfer it to another district in the interest of justice. 28 U.S.C. § 1406(a); *see Pinson*

*v. Rumsfeld,* 192 F. App'x 811, 817 (11th Cir. 2006) (observing the Eleventh Circuit

has only required transfer in the "limited situation when a party was directed by a

government official to file in the incorrect court and the case was time-barred").

Hedman argues venue is improper because he does not reside in Florida,

Dunkel has not alleged facts to show the alleged torts occurred here or were directed

here, and Dunkel has not shown he is subject to personal jurisdiction here. Doc. 19 at 9. Dunkel responds venue is proper here because the events giving rise to her claim occurred here and Hedman is subject to personal jurisdiction here. Doc. 23 at 6. She does not dispute that Hedman does not reside here. *See generally* Doc. 23 at 6.

Dunkel has not sufficiently shown this Court has personal jurisdiction over Hedman. She has not alleged he made any communications into Florida, let alone this district, or took any other action giving rise to her cause of action in this district. Absent such a showing, she has not established a prima facie case that venue is proper in this district. Because other defects in Dunkel's amended complaint warrant dismissing it, transfer to another district would not serve the interests of justice.

I recommend dismissing the amended complaint based on improper venue and, alternatively, the prudential standing doctrine (discussed above), failure to allege sufficient facts to show personal jurisdiction (discussed above), and failure to state a claim upon which relief may be granted (discussed below).

### D.   *Claims*

*1.   Standards*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." To decide a Rule 12(b)(6) motion, a court may consider only the factual allegations in the complaint, anything attached to the complaint, anything extrinsic to the complaint that is central to the claim and without challenge to its authenticity, and any judicially noticeable facts. *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811

(11th Cir. 2015). The court must accept as true factual allegations and construe them in the light most favorable to the non-movant. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012).

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Rule 8(a) does not require detailed allegations but requires more than unadorned accusations. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. To survive a motion to dismiss under Rule 12(b)(6), the allegations must include enough factual matter that states a claim to relief plausible on its face; in other words, that permits the court to reasonably infer the alleged misconduct was unlawful. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Allegations merely consistent with liability are not facially plausible. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

Federal Rule of Civil Procedure 9(b) supplements Rule 8(a). *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015). It requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud" but allows the plaintiff to allege scienter generally. *Fed. R. Civ. P. 9(b)*. To satisfy Rule 9(b), a plaintiff usually must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the [p]laintiff[]; and (4) what the [d]efendant[] gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007). Failure

to satisfy Rule 9(b) is a ground for dismissal. *FindWhat Inv. Grp. v. FindWhat.com,* 658 F.3d 1282, 1296 (11th Cir. 2011).

2.      *Judicially Noticeable Facts*

Under Federal Rule of Evidence 201, at any stage of a case and on its own, a court may take judicial notice of a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)–(d). If a court takes judicial notice of a fact before notifying a party, the party may be heard upon request. Fed. R. Evid. 201(e).

Here, to decide the motion to dismiss, the Court may judicially notice, from the documents attached to it and from the docket sheets of the criminal cases against Michael Dunkel and Hedman, the following facts: Michael Dunkel pleaded guilty to major fraud, stipulated to the truth and accuracy of facts to support his guilty plea, and consented to the forfeiture of $2.9 million; the United States District Court for the Eastern District of Virginia entered a judgment of conviction against him sentencing him to 60 months' imprisonment; the conviction has not been reversed, expunged, declared invalid, or questioned by issuance of a writ of habeas corpus; and Hedman pleaded guilty to major fraud and conspiracy to commit bribery and stipulated to the truth and accuracy of facts to support his guilty plea. Doc. 19-1, Doc. 19-2, docket sheet in *United States v. Keith Hedman,* No. 1:13-cr-74 (E.D. Va.). Those facts can be accurately determined from a source whose accuracy cannot reasonably be questioned (the Clerk of Court for the United States District Court for the Eastern

District of Virginia).

3.    *Claims*

a.    <u>Fraudulent Misrepresentation (count I)</u>

Under Florida law, the elements of fraudulent misrepresentation are: (1) the defendant made a false statement about a material fact; (2) the defendant made the statement knowing its falsity; (3) the defendant made the statement with intent to induce reliance on it; and (4) resulting injury by the plaintiff acting in justifiable reliance on the statement. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). A false statement may reach a plaintiff directly or circuitously but must be made with the intent it reach her and she act on it. *Philip Morris USA, Inc. v. Naugle*, 103 So. 3d 944, 947 (Fla. Dist. Ct. App. 2012).

Hedman argues the Court should dismiss the fraudulent-misrepresentation claim because Dunkel fails to allege facts to show she relied on any false statement, and fails to allege circumstances constituting fraud with the particularity Rule 9(b) requires. Doc. 19 at 11−14. She responds by stating facts she contends satisfy the elements of fraudulent misrepresentation, but does not state how she relied on any false statement. Doc. 23 at 8–9. She contends her statement that Hedman misled him "into believing that he [had] appropriate certifications to deal with" NASA and other government agencies, Doc. 17 ¶ 24, satisfies the particularity requirements of Rule 9(b). Doc. 23 at 9.

Dismissal of the fraudulent-misrepresentation claim is warranted because, at a minimum, Dunkel fails to allege facts to make plausible the existence of the fourth

element; specifically, that she was injured based on her own detrimental reliance on any false statement by Hedman. She also fails to allege fraud with the particularity required by Rule 9(b). The complaint allegation identified in her response does not suffice, nor do the additional facts she supplies in her response. Though she arguably has shown the content of the statement (a misrepresentation about the true owner of SAC), how it misled her husband (it caused him to believe SAC was qualified for 8(a) certification when it was not) and what Hedman gained by the fraud (a business relationship with a skilled and experienced contractor), she has identified no precise statement or the time and place of the misrepresentation.

I recommend dismissing the fraudulent-misrepresentation claim based on failure to state a claim upon which relief may be granted, and, alternatively, the prudential standing doctrine (discussed above), failure to allege sufficient facts to show personal jurisdiction (discussed above), and improper venue (discussed above).

b.    Intentional Infliction of Emotional Distress (count II)

Under Florida law, the elements of an intentional-infliction-of-emotional-distress claim are: (1) the defendant deliberately or recklessly inflicted emotional distress; (2) the defendant engaged in outrageous conduct; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe. *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007).

As a threshold matter, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Met. Life Ins.*

22

*Co. v. McCarson,* 467 So. 2d 277, 278–79 (Fla. 1985). It is insufficient that the conduct is tortious, criminal, intended to inflict emotional distress, or characterized by malice, *id.,* and it does not encompass "mere insults, indignities, threats, or false accusations," *Williams v. Worldwide Flight SVCS. Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004).[6] Whether conduct is "outrageous" is a question of law, and the standard is objective. *Matsumoto v. Am. Burial & Cremation Servs., Inc.*, 949 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2006).

Besides outrageousness, absent exceptions inapplicable here,[7] the conduct must be directed at the plaintiff and in her presence. *See Baker v. Fitzgerald*, 573 So. 2d 873, 873 (Fla. Dist. Ct. App. 1990) (affirming dismissal because "there was no showing of outrageous conduct directed at appellant herself."); *M.M. v. M.P.S.*, 556 So. 2d 1140, 1140–41 (Fla. Dist. Ct. App. 1989) (parents who were not present during abuse of child could not recover for distress caused by defendant's disclosure of

---

[6]*Compare Nims v. Harrison*, 768 So. 2d 1198, 1199–1200 (Fla. Dist. Ct. App. 2000) (defendant's alleged threats to kill the plaintiff and rape her children were sufficiently "outrageous") *with Gandy v. Trans World Computer Techn. Group*, 787 So. 2d 116, 119 (Fla. Dist. Ct. App. 2001) (employer's false promise to permanently employ plaintiff as a manager, which induced him to quit his old job and resulted in him not finding another job, insufficiently outrageous) *and Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. Dist. Ct. App. 1998) (landlord's failure to maintain residence, resulting in appellants' constructive eviction and leaving them without alternative housing, insufficiently outrageous).

[7]In cases involving dead bodies or pictures of dead bodies, there is no strict requirement that the conduct occur in the plaintiff's presence or be directed toward her. *Williams v. City of Minneola*, 575 So. 2d 683, 694 (Fla. 5th DCA 1991) (recognizing that opinions disallowing claims for intentional infliction of emotional distress when relatives of the victim were not present during the acts and the defendant's conduct was not directed at them "did not concern dead bodies or pictures of dead bodies and so did not call into operation the unique considerations which apply in such cases").

abuse); *Habelow v. Travelers Ins. Co.*, 389 So. 2d 218, 220 (Fla. Dist. Ct. App. 1980) (affirming dismissal because alleged conduct was directed at plaintiff's husband; observing, "In all cases we have found in Florida recognizing the tort of intentional infliction of emotional distress, the plaintiff was the recipient of the insult or abuse, or the message was clearly directed at the plaintiff through a third person").

Hedman argues the Court should dismiss the intentional-infliction-of-emotional-distress claim because Dunkel does not allege facts to show the plausibility of outrageous conduct or of her presence during the conduct, alleges only financial distress rather than emotional distress, and does not allege with sufficient particularity the fraud that allegedly caused her distress. Doc. 19 at 15–17. Dunkel responds she has stated a claim because Hedman knew the statements were false, Hedman's conduct was outrageous because it was illegal and resulted in her husband's incarceration, and Hedman's conduct caused severe emotional distress because she depended on her husband, lost her home, and had to return to work. Doc. 23 at 9–10.

Dismissal of the intentional-infliction-of-emotional-distress claim is warranted because Dunkel does not allege facts to show the plausible existence of outrageous conduct. Committing financial-based fraud is dishonest but not "beyond all possible bounds of decency." *See McCarson*, 467 So. 2d at 278–79 (quoted). That the alleged conduct is illegal does not mean it is "outrageous." *See id.* at 278. As this Court has explained, "mere deception, while unfortunate, does not amount to intentional infliction of emotional distress." *Gonzalez-Gonzalez-Jimenez de Ruiz v. United States,*

24

231 F. Supp. 2d 1187, 1200 (M.D. Fla. 2002) (applying Florida law). Even if the allegations suffice for the outrageous-conduct threshold, Dunkel fails to allege facts to show Hedman plausibly acted in her presence and with intent to inflict emotional distress against her.[8]

I recommend dismissing the intentional-infliction-of-emotional-distress claim based on failure to state a claim upon which relief may be granted, and, alternatively, the prudential standing doctrine (discussed above), failure to allege sufficient facts to show personal jurisdiction (discussed above), and improper venue (discussed above).

c.    Loss of Consortium (count VI)

Under Florida law, a plaintiff may bring a loss-of-consortium claim if a defendant's intentional tort injured her spouse. *Habelow*, 389 So. 2d at 220. The claim is "derivative" insofar as she may recover only if her spouse has a claim against the same defendant, *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971), but distinct insofar as she may bring the claim without joinder of her spouse, *Busby v. Winn & Lovett Miami, Inc.*, 80 So. 2d 675, 676 (Fla. 1955). An adverse judgment on the primary claim bars recovery on the derivative claim. *Albritton v. State Farm Mut. Ins. Co.*, 382 So. 2d 1267, 1268 (Fla. Dist. Ct. App. 1980).

Hedman argues the Court should dismiss the loss-of-consortium claim because collateral estoppel would prevent Michael Dunkel from challenging issues decided in

---

[8]Contrary to Hedman's contention, Dunkel's complaint, read liberally, alleges emotional distress as well as financial distress. *See* Doc. 17 ¶¶ 29 (alleging emotional distress without further details), 31 (alleging emotional distress without further details), 35 (alleging depression). Giving her the benefit of the doubt, she has alleged or could allege facts to show she suffered emotional distress.

his criminal conviction in a later civil action, the doctrine of *in pari delicto* would prevent him from recovering damages resulting from his wrongdoing, and without a valid primary claim, Dunkel has no derivative claim. Doc. 19 at 18–20. He also argues she has alleged no underlying fraud against her husband with the particularity required by Rule 9(b). Doc. 19 at 18. Dunkel responds she has stated a claim for loss of consortium because Hedman induced her husband to commit a felony by making fraudulent misstatements, and his incarceration for that felony has deprived her of a sexual relationship and the "affections, solace, comfort, companionship, conjugal life, fellowship, society, and assistance" of a successful marriage. Doc. 23 at 10.

To ensure finality and avoid inconsistent judgments, the United States Supreme Court has long enforced the principle that one cannot prevail in a civil tort action if doing so would undermine a final criminal judgment. *Heck v. Humphrey*, 512 U.S. 477, 484–85 (1994). Thus, a common-law action for malicious prosecution requires proof of termination of the prior criminal proceeding in favor of the accused, and one cannot bring a civil-rights or *Bivens*[9] claim if judgment in his favor necessarily would imply the invalidity of a criminal conviction not reversed, expunged, declared invalid, or questioned by issuance of a writ of habeas corpus. *See Heck*, 512 U.S. at 486–87 (discussing malicious prosecution; involving 42 U.S.C. § 1983 claim); *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (involving *Bivens* claims); *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1319 (M.D. Fla. 2005) (involving

---

[9]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971) (holding person injured by federal agent's constitutional violation may recover damages).

42 U.S.C. § 1985 claims; citing cases applying principle to 42 U.S.C. §§ 1983, 1985, and 1986 claims; also dismissing civil racketeering claims against criminal co-conspirators to avoid "absurdity": "a criminal conspirator's recovery from his co-conspirators of the loot stolen from fraud victims by the conspirators and eventually subject to forfeiture pursuant to the enforcement of the criminal laws"). Dismissal on that basis should be without prejudice to ensure an avenue for relief if the criminal conviction is later reversed, expunged, declared invalid, or questioned by issuance of a writ of habeas corpus. *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999).[10]

Under federal law, collateral estoppel bars a person convicted of a crime from contesting that conviction in a later civil action if the issue is identical in both actions, the issue was litigated in the criminal trial, determining the issue was critical and necessary to the judgment in the criminal case, and the burden of persuasion is not significantly heavier in the later action. *United States v. Jean-Baptiste*, 395 F.3d 1190, 1194–95 (11th Cir. 2005).[11] That principle applies to challenging the conviction as a whole as well as an element of the crime. *See id.* (defendant convicted of "knowingly and intentionally" committing a crime could not claim in later denaturalization proceeding he did not know he had committed a crime). A judgment

---

[10]Florida law also bars civil claims that would undermine criminal convictions. *See, e.g., Behm v. Campbell*, 925 So. 2d 1070, 1072 (Fla. Dist. Ct. App. 2006) (applying principle to bar claims for battery, false arrest/imprisonment, and trespass that would undermine conviction for resisting arrest).

[11]Federal law applies to determine the collateral estoppel effect of an earlier federal judgment. *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1179 (11th Cir. 2013). Florida's collateral estoppel rule is more restrictive in that it requires mutuality of the parties, *Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995), but that standard does not apply here.

based on a guilty plea has the same collateral effect as a judgment entered after a trial on the merits. *Blohm v. C.I.R.*, 994 F.2d 1542, 1554 (11th Cir. 1993).

The common-law defense of *in pari delicto* prevents a plaintiff who has participated in wrongdoing from recovering damages resulting from that wrongdoing. *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006); *Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580, 583–84 (Fla. 2013). Relatedly, Florida and other courts have expressed that, as a matter of equity or public policy, a spouse may not recover for loss of consortium if caused by her spouse's wrongdoing. *Jaffe v. Snow*, 610 So. 2d 482, 488 (Fla. Dist. Ct. App. 1992); *accord Ashwood v. Patterson*, 49 So. 2d 848, 850 (Fla. 1951) ("There is … a fundamental equitable principle that no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime" and that principle has been applied to bar derivative claims) (internal quotation marks omitted); *Tate v. Derifield*, 510 N.W.2d 885, 888 (Iowa 1994) (public policy required dismissal of consortium claim against informant's alleged use of false information to obtain illegal search warrant where evidence led to spouse's arrest, guilty plea, and conviction; "Because his responsibility for criminal conduct was established by his conviction, any injury [his spouse] suffered was a direct result of his own criminal violations.").

Dismissal of the loss-of-consortium claim is warranted based on the principle one cannot prevail in a civil tort action if doing so would undermine a final criminal judgment, collateral estoppel, and the *in pari delicto* doctrine. To convict Michael

Dunkel, the United States District Court for the Eastern District of Virginia had to find he "knowingly" executed a scheme with the intent to "defraud the United States" or "obtain money or property by means of false or fraudulent pretenses, representations, or promises." *See* 18 U.S.C. § 1031 (quoted). Finding in any later civil action by him against Hedman he did not know his statements were false would undermine the criminal conviction, which has not been reversed, expunged, declared invalid, or questioned by issuance of a writ of habeas corpus, and require relitigating an issue[12] already decided in an earlier federal case with a higher burden of proof.[13] Under the doctrine of *in pari delicto* he could not later recover damages from him resulting from a scheme in which he had participated. *See Earth Trades*, 108 So. 3d at 583–84.

Because Dunkel's husband has no primary claim against Hedman, her derivative claim for loss of consortium fails. *See Ehlers v. United States Navy*, 16-CV-30 (DWF/TNL), 2016 WL 1592478, at *3 (D. Minn. 2016), *adopted sub nom. by Edwin v. United States Navy*, CV 16-30 (DWF/TNL), 2016 WL 1559136 (D. Minn. 2016) (*Heck* principle bars wife's claim for loss of consortium); *Jaffe*, 610 So. 2d at 488 (wife cannot recover on derivative claim based on husband's wrongdoing).

I recommend dismissing the loss-of-consortium claim based on failure to state

---

[12]Because reliance on a statement known to be false is improper, someone who knows a statement is false cannot recover on fraud claims based on that statement. *M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 93, 94–95 (Fla. 2002).

[13]The burden of proof in a criminal case is "beyond a reasonable doubt," *Francis v. Franklin*, 471 U.S. 307, 313 (1985); the burden in a civil case is the lesser preponderance of evidence, *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 235 (1972).

a claim upon which relief may be granted, and, alternatively, failure to allege sufficient facts to show personal jurisdiction (discussed above), and improper venue (discussed above).

d.     Fraud in the Inducement (count IV)

Under Florida law, the elements of fraud in the inducement mirror the elements for fraudulent misrepresentation: (1) the defendant made a false statement about a material fact; (2) the defendant knew or should have known it was false; (3) the defendant made the statement with intent to induce reliance on it; and (4) resulting injury by the plaintiff acting in justifiable reliance on the statement. *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 497 (Fla. Dist. Ct. App. 2001).

Hedman argues the Court should dismiss the fraud-in-the-inducement claim because Dunkel has not alleged he made a false statement intending to induce her to enter a contract or that she was harmed because of that contract. Doc. 19 at 20–21. He also contends she has not alleged circumstances constituting fraud with the particularity Rule 9(b) requires. Doc. 19 at 21. Dunkel responds Hedman made a false statement to her husband to induce him to enter a contract, she has suffered emotional and financial damage because of her reliance on the contract, and the misrepresentation was made to her through her husband because his job affected both of them. Doc. 23 at 11. She does not address the requirements of Rule 9(b) as they apply to this claim. *See generally* Doc. 23.

Because the elements for fraud in the inducement mirror the elements for

fraudulent misrepresentation, dismissal of the fraud-in-the-inducement claim is warranted for the same reasons dismissal of the fraudulent-misrepresentation claim is warranted. I recommend dismissing the fraud-in-the-inducement claim based on failure to state a claim upon which relief may be granted, and, alternatively, the prudential standing doctrine (discussed above), failure to allege sufficient facts to show personal jurisdiction (discussed above), and improper venue (discussed above).

e.    Concealment (count V)

Under Florida law, the elements of fraud by concealment are similar to the elements for fraudulent misrepresentation and fraud in the inducement: (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known the fact should be disclosed; (3) the defendant knew her concealment or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the fact; and (5) the plaintiff detrimentally relied on the misinformation. *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068 (Fla. Dist. Ct. App. 2010). A duty to disclose arises if "one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties." *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003).

Hedman argues the Court should dismiss the concealment claim because Dunkel fails to allege facts showing she detrimentally relied on any alleged concealment and does not allege circumstances constituting fraud with the

particularity Rule 9(b) requires.[14] Doc. 19 at 11–14. She responds by stating facts she contends satisfy the elements of fraudulent misrepresentation, but does not state how she relied on any false statement. Doc. 23 at 8–9. She contends her statement that Hedman misled him "into believing that he [had] appropriate certifications to deal with" NASA and other government agencies, Doc. 17 ¶ 24, satisfies the particularity requirements of Rule 9(b). Doc. 23 at 9.

Because all but one of the elements for concealment mirror the elements for fraudulent misrepresentation and fraud in the inducement, dismissal of the concealment claim is warranted for the same reasons dismissal of the fraudulent-misrepresentation and fraud-in-the-inducement claims is warranted, and for the additional reason Dunkel has not alleged the existence of a duty to disclose.

I recommend dismissing the concealment claim based on failure to state a claim upon which relief may be granted, and, alternatively, the prudential standing doctrine (discussed above), failure to allege sufficient facts to show personal jurisdiction (discussed above), and improper venue (discussed above).

## E.    *Recovery of Forfeited Amount*

Hedman argues Dunkel should not be allowed to recover the money her husband forfeited due to his conviction for major fraud because she has not alleged she or her husband actually paid or owe any forfeiture and public policy bars recovery

---

[14]Hedman contends "a claim for fraudulent concealment is the same as one for fraudulent misrepresentation," Doc. 19 at 11, but Florida courts impose the additional requirement of a duty to disclose for claims of fraudulent concealment, *see R.J. Reynolds*, 53 So. 3d at 1068.

of the proceeds of illegal conduct. Doc. 19 at 21–23. Dunkel does not respond to that argument. *See generally* Doc. 23.

A person convicted of a crime has no right to retain the money he gained from that crime. *See United States v. Tilley*, 18 F.3d 295, 300 (5th Cir. 1994) (criminal has "no reasonable expectation that the law will protect, condone, or even allow, his continued possession of [proceeds of crime] because they have their very genesis in illegal activity"). That rationale, with the public policy considerations that would prevent Michael Dunkel from succeeding on a civil claim for fraud relating to the scheme (that a person should not be permitted to profit from his wrongdoing and courts should avoid undermining criminal convictions), prevents Dunkel from recovering the money her husband forfeited. Were Dunkel's claims to survive, she could recover no forfeited amounts.

## F.   *Amendment*

Under Federal Rule of Civil Procedure 15(a)(2), a court must freely grant leave to amend a pleading if justice so requires:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). If a more carefully drafted complaint might state a claim, a litigant proceeding without a lawyer must be given at least one chance to amend the complaint before the court may dismiss it with prejudice. *Bryant v.*

*Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). But dismissal with prejudice is appropriate if granting leave to amend would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Granting leave to amend would be futile if the complaint as amended would still be properly dismissed. *Id.*

Amendment to reference and add the exhibits is unwarranted based on futility and undue burden. Documents showing the defendant's ownership of a home in Maryland, Doc. 34-1, are unnecessary because the amended complaint already alleges the defendant's Maryland citizenship, Doc. 17 ¶ 3, and he does not contest his Maryland citizenship, *see generally* Doc. 19 at 2−3. The remaining documents provide background for the action but are neither factual allegations nor written instruments that may provide bases for the claims. Docs. 34-2−34-8. The defendant has already filed two motions to dismiss and should not have to file a third to address exhibits that do not provide bases for the claims.[15] Although Dunkel appears genuinely aggrieved by the conviction and incarceration of her husband, no claim for relief appears available to her under the circumstances she describes. I recommend **denying** Dunkel's motion for leave to amend, Doc. 34.

---

[15]Though, based on the unsworn allegations in Dunkel's response to the motion to dismiss, Doc. 23 at 2−5, she could arguably show personal jurisdiction over Hedman based on his business activity in Florida, she has not done so in her proposed second amended complaint. *See generally* Doc. 34. Because her claims are due to be dismissed for the other reasons explained above, the possibility that she could ultimately plead a prima facie case of personal jurisdiction against Hedman does not warrant permitting amendment.

34

## VI.    Conclusion

I recommend (1) **granting** Hedman's motion to dismiss, Doc. 19; (2) **dismissing** all of the claims; (3) **denying** Dunkel's motion for leave to amend, Doc. 34; and (4) **directing** the clerk to enter judgment dismissing the case and then close the case.

**Entered** in Jacksonville, Florida, on August 17, 2016.[16]

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    The Honorable Marcia Morales Howard
      Pamela Dunkel
      Counsel of Record

---

[16]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.